[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12680
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cv-02642-WFJ-AEP

ROBERT KELVIN LINDBLOOM,

Plaintiff–Appellant,

versus

MANATEE COUNTY,
a political Subdivision of the State
of Florida, TANYA SHAW, et al.,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 31, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Robert Lindbloom, proceeding *pro se* on appeal, appeals the district court's dismissal of his *pro se* complaint under 42 U.S.C. § 1983, which challenged the constitutionality of Florida's Local Government Code Enforcement Boards Act, Fla. Stat. §§ 162.01–.13, and alleged that his due process and civil rights were violated at a Manatee County, Florida, Code Enforcement Division hearing. Lindbloom argues that the district court erred in dismissing his complaint for failure to state a claim because the code enforcement hearing violated his due process rights and the individual defendants were not entitled to qualified immunity. Lindbloom also argues that the district court erred in dismissing his complaint for failure to state a claim because he successfully challenged the constitutionality of Florida's Local Government Code Enforcement Boards Act. We address each in turn and affirm the district court's dismissal of Lindbloom's complaint.

## I. BACKGROUND

Because we solely write for the benefit of the parties, we provide only as much detail as is necessary for us to reach our decision. Lindbloom, a property owner in Manatee County, Florida, received two notices of violation on July 31, 2018, from the county government for having large amounts of trash and debris in his yard and for having an unsound roof. The notices, which were sent to Lindbloom by certified mail, made clear that Lindbloom needed to clean the entire

property to remove the trash and debris and make his roof weatherproof and free from defects by August 10, 2018.  Subsequent re-inspections revealed that the violations remained uncorrected after the deadline and the county issued notices of hearing to Lindbloom by certified mail and email.

The hearing took place on September 26, 2018, with Lindbloom in attendance, and was transcribed.  Tanya Shaw, an officer with the county's Code Enforcement Division, outlined the alleged violations and presented photographs of Lindbloom's house.  Lindbloom had an opportunity to respond, and requested a "VGA cable" to plug his computer into.  Katharine Zamboni, an Assistant Manatee County Attorney, informed Lindbloom that he needed to provide them with a copy of anything he wished to present.  She asked if that would be a problem, and Lindbloom said that it would not be.  He then said that he wanted to "make a fourth request for a hearing aid," which he said he assumed would be provided by the Americans with Disabilities Act, and said that he could not hear any of the hearing.

Lindbloom argued that none of the photographs "represent current conditions."  When Shaw disagreed, he replied that he would "bring her back on perjury charges because there's been a lot of stuff done here."  He then advised the magistrate judge that he had "major surgery" and was "here against doctor's orders."  He was advised that, even if the photographs presented by Shaw did not

3

represent current conditions, he would have about a month to make the necessary changes, and that fines would only start accruing at that point. Lindbloom conceded that debris remained on his lawn and that he was "in the middle of trying to fix some storm damage." He further objected to the photographs on the ground that they were "taken with a zoom, which means she entered through my property electronically and took these pictures." He questioned what a structure was, and whether his roof was a part of his house's structure, which the magistrate advised him it was.

The magistrate informed Lindbloom that he found that the house was not in compliance and that Shaw, or another code enforcement officer, would conduct re-inspections to verify compliance. He gave Lindbloom until October 19, 2018, to correct the noncompliance; if it was not corrected by that point, a fine of $50 per day would be assessed for each violation, with a $20,000 cap. Lindbloom indicated that he would appeal the decision and that he "could not understand the first part of" the hearing. Zamboni advised him that he said that he "wished to go forward" with the hearing, and the magistrate told him that while he may not have been able to hear, the order adequately set out the violation. Lindbloom did not bring his property into compliance by the deadline and was assessed daily fees until February 19, 2019, at which point a $4,778.50 fee, along with $28.50 in recording fees, was imposed as a lien against his property.

4

Lindbloom did not appeal the magistrate's order, instead filing a *pro se* complaint in the instant case on October 29, 2018. He filed a second amended complaint on April 25, 2019, which serves as the operative complaint in this case. He alleged that his First and Fourth Amendment rights, his due process rights, and the Americans with Disabilities Act were violated, and that Manatee County Ordinance 15-10, adopted pursuant to Florida Statutes §§ 162.01–.13, were unconstitutional. In support of these claims, Lindbloom asserted a litany of arguments, which we do not endeavor to voluminously or exclusively recount.

Manatee County moved to dismiss the second amended complaint for failure to state a claim. Specifically, it argued that his procedural due process claim was unavailable because there was an adequate remedy under state law—namely, he could appeal the determination to the state circuit court. As to the substantive due process claim, it argued that Lindbloom's constitutional rights were not violated. It also argued that the individual defendants were entitled to qualified immunity and that Lindbloom's claims under the Florida Constitution—excessive fines and a violation of his right to privacy—were not sufficiently alleged because he made no showing that the fine was disproportionate or that he had a legitimate expectation of privacy in the description of the debris around his property. The district court granted the motion to dismiss with prejudice. Lindbloom timely appealed to us.

5

## II. DISCUSSION

A.    Due Process Claims

We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint is viewed in the light most favorable to the plaintiff, and all the plaintiff's well pleaded facts are accepted as true. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Further, *pro se* pleadings are held to a less strict standard than counseled pleadings and are liberally construed. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). However, in order to survive a motion to dismiss, the plaintiff's complaint must contain facts sufficient to support a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The district court must accept the plaintiff's allegations as true but is not required to accept his legal conclusions. *Id.* at 678. A threadbare recital of the elements of a cause of action, supported by conclusory statements, does not suffice. *Id.*

We note that we do not usually consider issues not raised in the district court and raised for the first time in an appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). And where a legal claim or argument that has

6

not been briefed on appeal is deemed abandoned, and its merits will not be addressed. *Id.* at 1330. While we construe briefs filed by *pro se* litigants liberally, a litigant's decision to represent themselves *pro se* does not excuse noncompliance with procedural requirements. To that end, issues not briefed on appeal by a *pro se* litigant are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Further, issues must be raised plainly and prominently on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014). Generally, issues raised in a conclusory manner, without citation to authorities and the record, are deemed waived. *See* Fed. R. App. P. 28(a)(8); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). Finally, we do not consider arguments raised for the first time in a reply brief. *Sappupo*, 739 F.3d at 683.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States. Qualified immunity protects government officials from individual liability for discretionary actions taken in the course of their duties. *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018). All except the plainly incompetent or an official who knowingly violates federal law are protected from litigation under qualified immunity. *Id.* at 951. To show entitlement to qualified immunity, the official must first establish that they acted within the scope of their discretionary authority. *Id.* Then the

burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Id.* The plaintiff must show that the officer's conduct violated a constitutionally protected right and that the right was clearly established. *Id.* Each defendant is entitled to an independent qualified-immunity analysis. *Id.*

The Fourteenth Amendment protects against deprivation by state action of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Id.* A violation of either can form the basis for a suit under section 1983. *Id.*

To prove his section 1983 substantive due process claim, a plaintiff must establish that he has been deprived of a federal constitutionally protected interest and that the deprivation was the result of an abuse of governmental power. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989). Deprivation of a property interest is unconstitutional if it is undertaken for an improper motive and by means that are pretextual, arbitrary and capricious, and without any rational basis. *Id.* To succeed on a section 1983 claim challenging the denial of procedural due process, a plaintiff must demonstrate: (1) the deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) a

8

constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

As a general rule, state-created property rights enjoy no substantive due process protection because they are not fundamental rights protected by the Due Process Clause. *Hillcrest Prop., LLP v. Pasco County*, 915 F.3d 1292, 1297–98 (11th Cir. 2019); *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014). We have recognized an exception to this general rule when rights are infringed by a *legislative*, rather than an *executive*, act. *Id.* at 1279–80. Executive acts characteristically apply to a limited number of people, often only one person, while legislative acts apply to a larger portion, if not all, of society. *Id.* at 1280. There is a strong presumption that a fine is not unconstitutionally excessive if it is within the range of fines prescribed by the legislature. *See United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

A violation of procedural due process does not become complete unless and until the state refuses to provide adequate due process. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019). Generally, due process requires notice and the opportunity to be heard. *See Grayden*, 345 F.3d at 1236. An appeal of a final administrative order to the Florida State Circuit Court satisfies due process because the circuit court has the power to remedy any procedural

defects and cure due process violations. *Club Madonna*, 924 F.3d at 1379 (citing *McKinney v. Pate*, 20 F.3d 1550, 1564 (11th Cir. 1994)).

Lindbloom's specific argument is that Manatee County violated his due process rights in two separate ways. First, it violated his substantive due process rights by putting a lien on his property. Second, it violated his procedural due process rights by providing him with an inadequate remedy. These arguments are without merit. With respect to Lindbloom's procedural due process claim, a procedural due process claim does not accrue unless and until the state refuses adequate due process. *Club Madonna*, *id.* at *1378.* Lindbloom could have appealed the final administrative order to the Florida State Circuit Court which has the power to remedy any procedural defects and cure procedural due process violations. Lindbloom failed to pursue that state court remedy, and therefore has no procedural due process claim.

With respect to his substantive due process claim—even if we assume arguendo that he is challenging a legislative act, not an executive act, with respect to which under some circumstances "the substantive component of the Due Process Clause . . . protects . . . from arbitrary and irrational governmental action," *Kentner*, 750 F.3d at 1278–80—Lindbloom has not pointed to irrational or arbitrary governmental action.

10

B.    Constitutionality of the Local Government Code Enforcement Boards Act

We review the constitutionality of a challenged statute *de novo*. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). A facial challenge asserts that a law always operates unconstitutionally and an as-applied challenge asserts that a law is unconstitutional on the facts of the particular case or to a particular party. *Id.* Due process is violated where a law forbids or requires an act in terms so vague that a person of common intelligence must necessarily guess at its meaning and differ in its application. *Id.* at 1310. Separation of powers principles recognize boundaries between the three branches of government and that one branch must not encroach on the central prerogatives of another. *See Miller v. French*, 530 U.S. 327, 341 (2000).

Florida's Local Government Code Enforcement Boards Act was created to promote the health and safety of state citizens by creating administrative boards to impose administrative fines and other noncriminal penalties to provide an effective and inexpensive method of enforcing county and municipal codes and ordinances where a pending or repeated violation persists. Fla. Stat. § 162.02. A special magistrate has the same status as an enforcement board. *Id.* § 162.03(2). Enforcement is initiated by a code inspector who notifies the violator and gives him a reasonable time to comply, and if the violation continues, the code inspector notifies the special magistrate and requests a hearing. *Id.* § 162.06(2). At the

11

hearing, the special magistrate must take testimony from the code inspector and the alleged violator, and formal rules of evidence do not apply. *Id.* § 162.07(3). The special magistrate must issue findings of fact, conclusions of law, and an order affording the proper relief. *Id.* § 162.07(4).

Upon notification by the code inspector that a previous order has not been complied with, the special magistrate can assess fines up to $250 per day that the violation continues. *Id.* § 162.09(1), (2)(a). A certified copy of the order filed with the public records constitutes a lien upon the property involved, and the county attorney may foreclose on the lien unless it involves real property that is a homestead under the Florida Constitution. *Id.* § 162.09(3). An appeal of the final administrative order may be taken within 30 days to the state circuit court, which must be limited to appellate review of the record created before the special magistrate. *Id.* § 162.11.

Manatee County adopted this code enforcement system as it pertains to property maintenance and structural standards through local ordinance. Manatee County Ordinance 15-10. The ordinance provides that all property in the county must be maintained in a sanitary condition and the "storage of trash, rubbish, and garbage is prohibited on any property." *Id.* § 2-9-105(c). Further, the ordinance provides that all structures must be structurally sound and all roofs must be sound and not have defects that admit rain. *Id.* § 2-9-106(b)(3). We have recognized the

authority under Florida law for special magistrates to adjudicate code violations pursuant to Fla Stat. §§ 162.01–.13. *See Club Madonna*, 924 F.3d at 1379.

Here, Lindbloom argues that (1) the Act is a bypass of due process and gives unlimited power to the county with no appeal; (2) the code-enforcement scheme transforms an administrative order into a court judgment in violation of separation of powers principles; (3) that the County Ordinance targets old, poor citizens; and (4) that the definition of "trash and debris" is vague. We note at the outset that Lindbloom has inadequately developed his third argument, *see Sapuppo*, 739 F.3d at 680–81, and that he has waived his fourth argument by not raising it before the district court, *see Access Now*, 385 F.3d at 1331.

As to Lindbloom's first two arguments, we conclude that they are without merit. As a practical matter, the Act *does* allow for an appeal—that Lindbloom felt that it was an *inadequate* avenue of appeal and opted against exercising does not transform an otherwise-available appeal into an unavailable one.

With respect to his separation-of-powers argument, we find persuasive a decision by Florida's Fifth District Court of Appeal that rejected an identical argument. The Fifth DCA reasoned that (1) the power given to the special magistrate did not cross the line between "quasi-judicial" and "judicial"; (2) the special magistrate cannot impose criminal penalties; (3) presentment of a defense is permitted before enforcement of any lien; and (4) the statutory scheme provides

13

for fundamental due process requirements, including notice and a hearing, creation of a record, and an appeal. *Michael D. Jones, P.A. v. Seminole Cty.*, 670 So.2d 95, 96 (Fla. 5th DCA 1996). While obviously not binding, we agree with the *Jones* court that the Act does not violate separation of powers principles.

And in any event, Lindbloom has not persuasively demonstrated how the boundaries of the branches of government have been encroached by the Act. *See Miller*, 530 U.S. at 341. His freewheeling argument that the Act "bestows upon the county" the power to "detain, arrest, and incarcerate citizens[] for code violations," and therefore violates separation of powers principles finds no support in the law. It is true that the Act allows code enforcement boards to "[i]ssue orders having the force of law to command whatever steps are necessary to bring a violation into code compliance," Fla. Stat. § 162.08(5), and that its enforcement methods include "the issuance of a citation, a summons, or a notice to appear in county court or arrest for violation of municipal ordinances," *id.* § 162.22, these powers are narrow, *see* Op. Att'y Gen. Fla. 2009-37, and the punishments are minimal. Accordingly, we affirm the district court's order in this regard.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly dismissed Lindbloom's complaint with prejudice for failure to state a claim. The arguments he raises on appeal are without merit. The district court's order is

14

**AFFIRMED.**